UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRANK NICHOLAS,

                        Plaintiff,                       14-cv-5726 (PKC)

      -against-                       MEMORANDUM
                                                      AND ORDER

WYNDHAM HOTEL GROUP, LLC, and WHG
HOTEL MANAGEMENT, INC.,

                        Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiff Frank Nicholas brings this action against his former employers, defendants Wyndham Hotel Group, LLC and WHG Hotel Management, Inc. (collectively, "Wyndham"),[1] invoking this court's diversity jurisdiction, 28 U.S.C. § 1332(a).  He alleges that Wyndham breached a contract of employment with him when it terminated him.  Wyndham now moves to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P.  Because the facts alleged in the operative complaint do not overcome New York's presumption of at-will employment, Wyndham's motion is granted.

BACKGROUND

        The following facts are taken from the Second Amended Complaint ("SAC") (Dkt. No. 37) and its exhibits, and are accepted as true for the purposes of this motion.  From March 2008, Nicholas was employed by Wyndham, first as the General Manager the Wyndham

---

[1] The defendants were originally designated as "Wyndham Worldwide Corporation" and "Wyndham Hotel and Resorts."  The caption in Nicholas's Second Amended Complaint bears the names of the correct defendant entities.  Wyndham Worldwide Corporation is in fact the sole member of defendant Wyndham Hotel Group, LLC.  (Dkt. No. 35.)

Garden Times Square South Hotel ("WG"), and then, from March 2012, as General Manager of the TRYP Times Square South Hotel ("TRYP").  (SAC ¶¶ 10, 15.)  His performance reviews were consistently excellent and noted his effectiveness as a manager and team-builder.  (SAC ¶¶ 12, 13, 17.)  In a 2010 company-wide employee survey, his team gave him significantly higher ratings than the average manager.  (SAC ¶¶ 29–31.)  In 2011, he was named "Hotel General Manager of the Year" by the Greater New York Chapter of the Hospitality Sales and Marketing Association International.  (SAC ¶ 14.)  Wyndham's level of confidence in him is indicated, Nicholas asserts, by the fact that, after WG closed, it retained his services and assigned him to manage TRYP, a new hotel that had been struggling.  (SAC ¶¶ 15, 16.)  Under Nicholas's leadership, TRYP results improved significantly.  (SAC ¶¶ 18, 19.)

Nicholas was thus "shocked" to receive a "Final Warning" memo, dated December 7, 2012, from Ryan Schneider, Wyndham's Vice-President of Operations.  (SAC ¶ 19, SAC Ex. A.)  The memo, while acknowledging Nicholas's competence in running the hotel's operations and finances, reported that "multiple sources" had expressed dissatisfaction with Nicholas's management and communication style, calling him a "bully" and complaining about his tendency to use profanity and to yell at people in public.  It also faulted Nicholas for failing to adhere to company policies, including by failing to follow basic accounting guidelines and by hiring an individual as an independent contractor without authorization.  It warned Nicholas that failure to improve his "behavior, communication, and adherence to company policies and procedures" could result in termination of his employment.

Nicholas answered Schneider in a December 21, 2012 memo, denying most of the allegations in the "Final Warning" and complaining that Schneider's investigation was not transparent.  (SAC ¶ 23, SAC Ex. B.)  He wrote that he was "at a bit of a loss to understand"

how TRYP's improvements "in productivity, morale, Trip Advisor Rankings, ownership satisfaction and financial results" "could have been achieved if the environment described in [Schneider's] memo exist[ed]." He also wrote that the accusations against him conflicted with the reports of TRYP employee team building sessions recorded by the human resources department.

Another team building session was held in March 2013. (SAC ¶ 25.) Nicholas did not attend, in order to encourage open discussion among employees. The report of the session, compiled by the Director of Human Resources, contains no complaints about Nicholas. (SAC Ex. C.)

Nicholas was then "again shocked" to receive a second memo, dated April 24, 2013 and labeled "Last Chance Warning," this time from Scott Marn, another Wyndham executive.[2] (SAC ¶ 26, SAC Ex. D.) The memo reported that two members of Nicholas's management team had requested transfers, complaining of an inability to work with Nicholas. It gave examples of Nicholas's "Rude, Insensitive, Aggressive and Retaliatory Behavior," and of "Demeaning, Confrontational and Threatening Behavior." It warned: "Further confirmed reports of the behavior or actions by you, described herein, will result in immediate termination of your employment."

In July 2013, Marn visited TRYP and warned Nicholas that he was continuing to receive complaints about him. (SAC ¶ 34.) However, he also interviewed TRYP staff members and told Nicholas that those interviews made it apparent that he had been receiving incomplete or biased information from TRYP's Human Resources Director. (SAC ¶ 35.) The Human Resources Director resigned that month, and subsequently Marn informed Nicholas that no more

---

[2] The complaint does not specify Marn's title or position.

complaints were being made about him, and that the hotel's "environment had turned around and was positive." (SAC ¶¶ 36–37.) Marn suggested to Nicholas that the Human Resources Director had been "involved with negatively slanting the opinion of plaintiff amongst defendants' management." (SAC ¶ 37.) In September 2013, Marn advised Nicholas that he had been referred to take on the management of the Wyndham Garden Chinatown hotel, in addition to TRYP. (SAC ¶ 38.) On October 18, 2013, however, Nicholas was terminated. (SAC ¶ 39.) Marn advised Nicholas that the termination was "for cause." (Id.)

Nicholas filed a summons and complaint in New York Supreme Court, New York County, on May 9, 2014, asserting one claim for breach of contract. On July 25, the defendants filed a notice of removal to this Court (Dkt. No. 1), and subsequently filed a pre-motion letter arguing for dismissal based on their contention that Nicholas was an at-will employee. (Dkt. No. 8.) Following a pretrial conference on September 23, this Court granted leave to Nicholas to amend his complaint to take account of the defendants' arguments. (Dkt. No. 13.) Nicholas then filed an amended complaint on October 14 (Dkt. No. 16), and the defendants moved to dismiss on November 17. (Dkt. No. 19.) On February 11, 2015, this Court ordered Nicholas further to amend his complaint to properly allege the citizenship of defendant Wyndham Hotel Group, LLC. (Dkt. No. 34.) Nicholas complied and filed his SAC on March 3, 2015.

LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. In assessing the complaint, the district court must draw all reasonable inferences in favor of the non-movant. In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action," however, are not entitled to any presumption of truth. Iqbal, 556 U.S. at 678.

DISCUSSION

In support of its motion, Wyndham once again asserts that Nicholas was an at-will employee, and thus that he cannot state a breach of contract claim based on the termination of his employment. "Under New York law, 'employment for an indefinite or unspecified term' is presumed to be 'at will and . . . freely termina[ble] by either party at any time without cause or notice.'" Reddington v. Staten Island Univ. Hosp., 511 F.3d 126, 137 (2d Cir. 2007) (quoting Horn v. N.Y. Times, 100 N.Y.2d 85, 91 (2003)) (alterations in original). "[A]bsent 'a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, an employer's right at any time to terminate an employment at will remains unimpaired.'" Smalley v. Dreyfus Corp., 10 N.Y.3d 55, 58 (2008) (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 305 (1983)). The complaint does not allege that Nicholas was hired for a fixed period of time; his employment thus falls under the at-will presumption. Rooney v. Tyson, 91 N.Y.2d 685, 689 (1998).

Nicholas, however, argues that the at-will presumption is overcome in his case, because the "totality of the circumstances" establishes that he had an implied employment contract limiting Wyndham's ability to fire him. He emphasizes that he worked for Wyndham

for five and a half years, that he was allowed to participate in Wyndham's 401(k) and Long-Term Incentive plans, and that Wyndham retained his services on various projects, including rewriting company standards for the corporate office.  (See Opp'n 14–15.)  These allegations, he asserts, show that Wyndham never intended to treat him as an at-will employee.  The bulk of his argument, however, hinges on a provision of Wyndham's Employee Handbook, which states: "We prefer an approach to discipline which calls for corrective actions before more serious forms of discipline become necessary.  This promotes honesty, cooperation, trust and progress." (SAC ¶ 42.)  Nicholas contends that, once Wyndham initiated a disciplinary process by sending the "Final Warning" memo, he was entitled to a fair review, but that instead he received only a "sham process, which was conducted in bad faith, in order to improperly withhold the severance package that would be rightfully owed to Plaintiff had he been terminated without cause." (Opp'n 16.)

    At the outset, the Court notes that Nicholas faces an uphill battle.  Plaintiffs seeking to challenge the applicability of the at-will doctrine bear a "difficult pleading burden." Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 334 (1987).  The New York Court of Appeals has described itself as "exhibit[ing] a strong disinclination to alter the traditional rule of at-will employment." Horn, 100 N.Y.2d at 93.  In the absence of an express written limitation in an employment contract, it has only departed from the at-will rule on two occasions, which both "involved very specific substitutes for a written employment contract." Id. at 96.  In Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458 (1982), the plaintiff was induced to leave his former employer by oral promises that he would not be discharged by the defendant without "just cause," and the job application he signed specified that his employment would be subject to the provisions of the defendant's personnel handbook, which represented that the defendant would

only terminate employees "for just and sufficient cause." Id. at 460.  In Wieder v. Skala, 80 N.Y.2d 628 (1992), which is not at issue here, the plaintiff, an attorney, was terminated by his law firm for insisting on reporting a colleague's misconduct, as was required by DR 1-103(A) of the New York Code of Professional Responsibility, a rule which the court described as "critical to the unique function of self-regulation belonging to the legal profession."  Id. at 636.

According to Nicholas, the circumstances of his case bring it under the Weiner exception to the at-will doctrine, or compel the recognition of a third type of exception.  Weiner, however, is distinguishable.  Unlike in that case, Nicholas does not allege that he was induced to leave other employment by a promise by Wyndham not to terminate him without cause.  In Weiner, it was that "express, unilateral promise on which the employee relied" which constituted the substitute for a written employment contract and overcame the at-will presumption.  Horn, 100 N.Y.2d at 96.  Moreover, unlike the personnel handbook in Weiner, which expressly stated that the employer would "resort to dismissal for just and sufficient cause only," Weiner, 57 N.Y.2d at 460, the Wyndham Employee Handbook merely expresses a "prefer[ence]" for a multi-step disciplinary process.  Such aspirational language patently does not constitute an express limitation on Wyndham's right of discharge.  See Lobosco v. N.Y. Tel. Co./NYNEX, 96 N.Y.2d 312, 317 (2001) (holding that an employee manual provision assuring employees that they would be protected from reprisal for reporting misconduct did not alter the at-will relationship, and cautioning that "[r]outinely issued employee manuals, handbooks and policy statements should not lightly be converted into binding employment agreements"); Azzolini v. Marriott Int'l, Inc., 417 F. Supp. 2d 243, 247–48 (S.D.N.Y. 2005) (holding that a progressive discipline policy in an employee handbook did not rise to the level of an express limitation).

Importantly, Wyndham's Employee Handbook also contained a disclaimer, which Nicholas also quotes, stating that Wyndham "reserves the absolute right to initiate the form of discipline it deems appropriate. Nothing in this policy is intended to alter the at-will nature of your employment with [Wyndham]. Thus, you or [Wyndham] may terminate employment at any time, with or without just cause." (SAC ¶ 42.) Nicholas argues that the disclaimer is in tension with the Handbook language on which he relies, making it "inherently contradictory and vague." (Opp'n 18.) It is well settled, however, that such an explicit disclaimer "prevents the creation of a contract and negates any protection from termination [a] plaintiff may have inferred from" other portions of the same document. Lobosco, 96 N.Y.2d at 317; see also Baron v. Port Auth. of N.Y. & N.J., 271 F.3d 81, 88 (2d Cir. 2001) (holding that "where a sufficiently unambiguous disclaimer, conspicuously placed in the employee handbook . . . is at issue . . . the implied contract claim may be dismissed as a matter of law"); Jain v. McGraw-Hill Cos., 827 F. Supp. 2d 272, 278–79 (S.D.N.Y. 2011) (holding that a non-retaliation policy in an employee manual did not limit the employer's right to discharge at will where the manual also included explicit disclaimers). "An employee seeking to rely on a provision arguably creating a promise must also be held to reliance on the disclaimer." Lobosco, 96 N.Y.2d at 317. Nicholas thus cannot rely on the Handbook to argue that his employment was not at will.[3]

Nicholas asserts that, once Wyndham sent him the "Final Warning" memo, he was entitled to an investigation in accordance with the approach laid out in the Employee Handbook—that is, he argues, one that was entirely transparent and in good faith. Alternatively,

---

[3] Wydham contends that the Employee Handbook quoted by Nicholas was replaced, effective November 2012, by a Second Handbook with more extensive at-will disclaimers and an acknowledgement form for the employee to sign. (Bennett Decl. Ex. B.) Nicholas, however, argues that the Second Handbook is not properly before the Court on this motion to dismiss, because it is neither integral to nor relied upon in his complaint. (Opp'n 6–13.) The Court need not resolve this disagreement, because Nicholas's claim fails even in the absence of any post-November 2012 handbook in the record. It is Nicholas's burden to allege facts showing that the at-will presumption has been overcome, and, as this opinion demonstrates, the complaint fails to do this.

he claims that Wyndham's initiation of a "sham" process estops it from arguing that he was an at-will employee. But, setting aside the fact that the process Nicholas received appears to have comported with the Handbook's "prefer[ence for] calls for corrective actions before more serious forms of discipline become necessary," the Employee Handbook says nothing about transparency or good faith. In any event, New York law does not "require[] good faith in an at-will employment relationship." De Petris v. Union Settlement Ass'n, Inc., 86 N.Y.2d 406, 410 (1995); see also Riccardi v. Cunningham, 291 A.D.2d 547, 548 (2d Dep't 2002) (dismissing a breach of contract claim premised on the defendants' alleged violation of their duty to terminate the plaintiff "only in good faith and with fair dealing"). Finally, an employer does not waive the at-will relationship simply because it went beyond its legal obligations by initiating a disciplinary process. See La Duke v. Hepburn Med. Ctr., 239 A.D.2d 750, 754 (3d Dep't 1997) (rejecting a similar waiver or estoppel argument where the employer investigated the incident that led to the plaintiff's termination and gave the plaintiff a reason for her termination). In fact, the rule Nicholas advocates would give employers a perverse incentive never to attempt a multi-step disciplinary procedure, for fear of thereby limiting their ability to fire employees.

        None of the other facts alleged by Nicholas, alone or in combination, show that he was ever anything other than an at-will employee. The fact that Nicholas worked for Wyndham for five and a half years and was assigned important tasks does not help him, because "the quality and length of an employee's service are not relevant factors in determining whether the presumption of at-will employment has been overcome." Id. Nicholas cites no authority for the proposition that an employee's participation in his employer's retirement or shareholder incentive plans overrides the at-will presumption. Accordingly, Nicholas has failed to rebut the presumption of at-will employment, and his breach of contract claim must be dismissed.

CONCLUSION

For the foregoing reasons, Wyndham's motion to dismiss is GRANTED. The Clerk is directed to close the case.

SO ORDERED.

*P. Kevin Castel*
P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 9, 2015